Michael L. Rodenbaugh
California Bar No. 179059
Erin Dennis Vivion
California Bar No. 262599
***RODENBAUGH LAW***
548 Market Street
San Francisco, CA  94104
(415) 738-8087 phone/fax
info@rodenbaugh.com

Anthony L. Abboud
Illinios Bar No. 6224356
*(Pro Hac Vice application pending)*
***ABBOUD LEGAL, LLC***
1363 Shermer Road, Suite 219
Northbrook, IL 60062
(847) 239-7165 phone
tony@abboudlegal.com

Attorneys for Defendant Teachbook.com LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br>                    Plaintiff,<br>v.<br>TEACHBOOK.COM, LLC,<br>                    Defendant. | **CASE NO.  CV 10-03654 - RMW (MEJ)**<br>**HON. RONALD M. WHYTE**<br><br>**DATE:    DECEMBER 17, 2010**<br>**TIME:      9:00 a.m.**<br>**COURT: 4th Floor, #6** |

### DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR VENUE, OR ALTERNATIVELY, TO TRANSFER VENUE

Defendant Teachbook.com, LLC  ("Teachbook") hereby moves to dismiss the Complaint filed by Facebook, Inc. ("Facebook") on August 18, 2010, for lack of personal jurisdiction and/or improper venue pursuant to F.R.C.P. 12(b)(2) and (3).  Alternatively, Teachbook moves to transfer the case to the Northern District of Illinois where it would be heard more efficiently and conveniently for the

Court and the parties, and in the interests of justice.  28 U.S.C. sec. 1404(a).  The following Points and

Authorities are offered in support of the Motion.  In further support of the Motion, Teachbook

concurrently has filed the Declarations of Gregory Shrader and Tony Abboud, referenced herein.

## TABLE OF CONTENTS

I.  Statement of Facts……………………………………………………………………. 2
   A.  Teachbook's Mark and Services…………………………………………………. 2
   B.  Facebook's Mark and Services…………………………………………………… 4
   C.  The Claims and Procedural History……………………………………………… 5
   D.  Jurisdictional Facts – Teachbook………………………………………………… 5
   E.  Jurisdictional Facts – Facebook…………………………………………………. 6
II.  Argument:  The Court Lacks Personal Jurisdiction Over Teachbook…………………… 7
   A.  Teachbook has not purposefully availed itself of the privileges of doing
      business in California, so the Court lacks specific jurisdiction…………………… 9
      1.  Teachbook has not purposefully directed <u>any</u> activity towards California……….. 10
         a.  Teachbook did not commit any act "expressly aimed" here……………… 10
         b.  Teachbook did not knowingly cause Facebook to suffer harm here……… 13
   B.  Plaintiff's cause of action did not arise from Defendant's forum activities………………15
   C.  The exercise of jurisdiction over Teachbook cannot be reasonable………………………. 15
III.  Venue is not proper in California……………………………………………………… 20
   A.  Legal standard for transfer of venue…………………………………………………. 21
   B.  Transfer would promote convenience of parties and witnesses…………………………... 22
   C.  Interest of Justice………………………………………………………………………. 24
IV.  Conclusion…………………………………………………………………………… 25

## I.  STATEMENT OF FACTS

### A.  Teachbook's Mark and Services.

Teachbook is a startup venture, providing a professional, online community for teachers,

allowing teachers to create, share and search a database of lesson plans and instructional videos created

by other teachers.  (Shrader Decl., para. 3.)  Teachbook also provides teachers a means to communicate

in a secure, professional environment, and to find online courses, instructional modules and other

education resources.  (*Id.*)  In short, Teachbook is a tool to help teachers manage their classrooms and

their careers.  (*Id.*)

In March, 2009, Teachbook applied to register its TEACHBOOK mark with the USPTO, based

on its 'intent to use' the mark for a variety of online services including "chat rooms … concerning educational careers, general interest, classifieds, virtual community, social networking, photo sharing, and transmission of photo images", "databases in the field of educational careers…", and "computer service in the nature of customized web pages featuring user-defined information, personal profiles and information." (Abboud Decl., para. 2.)

Prior to filing its trademark application, via its trademark counsel in Chicago, Teachbook commissioned a trademark clearance search which revealed the following thirty-one (31) "–BOOK" formative marks for interactive computer services such as online chat, social networking, third party content hosting, online communications, and/or related services. (*Id.,* para. 3.) Ten of these marks were first used in commerce prior to Facebook, and they all have registered, including HUMANBOOK and MY YEARBOOK, each for services identical to Facebook's core services. (*See, id.*, para. 4.)

Moreover, the USPTO's various Examining Attorneys examined the other 21 of these in light of Facebook's prior trademark applications and/or registrations, searching for potential conflicts based upon likelihood of confusion, but none cited FACEBOOK as likely to be confused with any of those marks. These include the since-registered trademarks BITBOOK, HOOKBOOK, LOOKBOOKS, WEBOOKS and SMILEBOOKS – all for services identical to Facebook's core services. (*See, id.*) They also included four more marks that now are approved for registration, pending proof of use – MAXBOOK, INFOBOOK, MYBIZZBOOK.COM, EDUBOOK 2.0 – all for services identical to Facebook's core services. (*See, id.*) The other twelve "BOOK" marks also covered such services, were approved by Examining Attorneys by the time of the TEACHBOOK application, yet later abandoned for various reasons. (*See, id.*)

In addition there were many other websites employing community and/or social networking services under a –BOOK formative mark and/or domain name – including Faithbook.com,

Spacebook.com and AdoptionBook.com, each registered in 1999 or 2000.  (*Id.*, para. 5.)  As of the time the TEACHBOOK trademark application was filed in March, 2009, Facebook apparently had not publicly objected to registration or use of any of these 31 marks or dozens of websites.  (*Id.,* para. 4; Shrader Decl., para. 7.)  Thus, Teachbook could not have known that Plaintiff could be harmed by adoption of the Teachbook mark.  (*Ibid.*)

B. **Facebook's Marks and Services**.

Facebook operates a website which, according to its home page, "helps you connect and share with the people in your life."  (Abboud Decl., para. 6.)  More specifically, since inception in 2004, Facebook's core service has been to provide an online facebook – a directory that helps people identify and communicate with one another.  (*Id.*)  Nevertheless, Facebook has managed to register the generic English word FACEBOOK as a trademark with the USPTO, including registration for the online directory and communications services which the mark merely describes, or generically references. (*Id.*, para. 7.)  Furthermore, Facebook has maintained an application to register the common English word FACE as a trademark with the USPTO, for online communication services.  (*Id.*, para. 8.) Furthermore, Facebook has agreed, and represented to the USPTO, that there is <u>no</u> likelihood of confusion between FACE and FACEBOOK, on the one hand, and on the other hand the mark FACEPARTY, registered by a third party for identical services.  (*Id.*, para. 9.)

Facebook apparently has never sought to register the word BOOK as a trademark with the USPTO, nor does it appear to have used the word BOOK as a trademark.  (*Id.*, para. 10.)  Yet in this case, incredibly, Facebook alleges that TEACHBOOK is infringing, for services that are not nearly so identical.

C. **The Claims and Procedural History.**

Despite the stark differences in the parties' marks and services, the clear genericness of the word 'facebook' as applied to Plaintiff's core services, and the admission that FACEPARTY is not likely to confuse or dilute FACEBOOK, Facebook formally opposed Teachbook's trademark application before the USPTO in March, 2010. As discovery was about to begin in those proceedings, Facebook filed this lawsuit in August, and the USPTO litigation was stayed accordingly. In its Complaint before this Court, Facebook alleges that Teachbook has infringed and diluted the Plaintiff's trademark rights, and otherwise has unfairly competed with Plaintiff, within the meaning of the Lanham Act and California law.

D. **Jurisdictional Facts -- Teachbook.**

Teachbook is a Delaware LLC with its only place of business in Illinois. (Shrader Decl., para. 2.) Teachbook had no relevant contacts with California at the time the Complaint was filed. (*Id.*, para. 4.) As of that time, Teachbook had very few registered users, none identifying from California. The only registered accounts had been issued to the General Managing Partner of Teachbook, seven contractors and developers hired by Teachbook, and approximately ten other users, none of whom identified as from California. (*Id.*)

Teachbook's office, employees, and documents are all located in Illinois. (*Id.*, para. 5.) Teachbook does not maintain any offices, addresses, telephone listings or bank accounts in California, nor does it advertise or solicit business in California. (*Id.*) Teachbook does not maintain contractors, agencies or employees in California, does not own, use, possess or hold a mortgage or other lien on any real property in California, and is not a party to any contract requiring any acts to be performed in California. (*Id.*) Teachbook is not incorporated in, nor registered to do business in California. (*Id.*)

Teachbook does not sell or advertise any physical products at retail or to the general public.  (*Id.*)
Teachbook representatives have not traveled to California.  (*Id.*)

In fact, Teachbook decided that it would NOT do business in California and specifically has
restricted California residents from its service offerings, due to California's stringent anti-SPAM laws.
(Shrader Decl., para. 6).  In other words, Teachbook intentionally has <u>not</u> targeted the State of
California, precisely so that it would <u>not</u> be subject to California laws, as they would require separate
development resources that Teachbook did not need or want to expend, because its intent was to form a
local community of teachers in the Chicago area first, and then potentially expand elsewhere.[1]  (*Id.*)
In fact, the Teachbook site's "Privacy Policy", incorporated into the site's Terms of Service, devoted a
separate paragraph to this subject:

> 6. California Residents
> Teachbook is not currently seeking membership of California residents. If Teachbook
> becomes aware that California residents have been granted membership to the Site,
> Teachbook will take reasonable steps to remove your information from our database
> and files.  (*Id.*)

**E.  <u>Jurisdictional Facts -- Facebook.</u>**

Facebook is a global company.  Complaint, para. 14.  It maintains eleven offices in the United
States, and twelve other offices around the world.  (Abboud Decl., para. 11.)  Plaintiff is a Delaware
corporation with a substantial place of business in Chicago, as well as substantial places of business in
California and in six other states – Georgia, Michigan, New York, Oregon, Texas, Washington – and
the District of Columbia.  (*Id.*, para. 12.)  According to Plaintiff's 'Careers' website, "[t]he Chicago

---

[1]   California has passed the most restrictive spam legislation in the nation. The act, in stark
contrast to all existing statutes, eliminates the current format and content requirements in
California spam laws, and instead, completely prohibits all unsolicited email sent either from or
to California, unless the advertiser has: (1) the recipient's direct consent, or (2) a pre-existing or
current business relationship with the recipient. Cal. Bus. & Prof. Code § 17529.1(o)(1)-(2).

Electronic Frontier Foundation, <u>*Internet Law Treatise – Marketing: Spam*</u>, Apr. 7, 2010.

team takes great pride in representing Facebook to the Midwest…". (*Id.*) Plaintiff officially registered to do business and designated an Illinois agent with the Illinois Secretary of State in 2008. (*Id.*) Moreover, according to at least one reputable source of information and statistics about Facebook and its users, Facebook has more than 5.5 <u>million</u> users in the Chicago metropolitan area as of August, 2010, when it filed its misguided Complaint. (*Id.*) Since Facebook clearly avails itself of the privileges of doing business in Illinois and in Chicago, it certainly should not be heard to complain about prosecuting its alleged trademark rights there.

Indeed, the PACER system indicates that Facebook has been party to approximately 67 federal civil lawsuits in its six year history, and the majority of those (36) have been in courts outside of California. (Abboud Decl., para. 13.) As of this filing, Plaintiff is engaged in 17 federal lawsuits outside of California, including several cross-complaints allegedly filed to protect Plaintiff's intellectual property rights. (*Id.*, para. 14) In addition, Plaintiff's counsel in this case boasts of 650 lawyers throughout the U.S., who practice law "Without Boundaries." (*Id.*) Indeed, Plaintiff's lead lawyer in this case litigated a case for Google in the Northern District of Illinois in 2008. (*Id.*) Thus, Facebook and its counsel are well accustomed to prosecuting and defending multiple federal lawsuits outside of California simultaneously at any given time, and so Facebook is surely able to accommodate one more lawsuit outside of California now – particularly since the relative balance of hardships so heavily leans towards the Northern District of Illinois as the proper venue.

## II.     ARGUMENT:
## THE COURT LACKS PERSONAL JURISDICTION OVER TEACHBOOK

As demonstrated herein, and by the evidence presented in the supporting Declarations, Facebook's choice of forum is a self-serving effort to burden Teachbook -- comparatively a miniscule company in terms of employees and wealth -- with the tremendous costs and inconvenience of litigation in a foreign state far from home. California is the <u>one</u> state in which Teachbook expressly

chose <u>not</u> to do business, for reasons completely unrelated to Facebook.  Therefore, the authorities

discussed below demonstrate that this Court lacks personal jurisdiction over Teachbook and, as a

result, the Court should dismiss the Complaint, pursuant to Rule 12(b)(2), else transfer it to the

Northern District of Illinois for convenience and equity.

Plaintiff must prove that defendant had "certain minimum contacts" with the forum state, at the

time the complaint was filed, "such that the maintenance of the suit does not offend traditional notions

of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal

quotations omitted); <u>Calder v. Jones,</u> 465 U.S. 783, 783 (1984);  <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d

1151, 1154 (9th Cir. 2006); <u>Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

2004), citing, Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Farmers Ins. Exch. v. Portage La

Prairie Mut. Ins. Co.</u>, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event

causing the litigation may be considered."); <u>Total Seal, Inc. v. Performance Motorsports, Inc.</u>, 2009

WL 2762046 (D. Ariz. 2009) (same).  Plaintiff simply cannot meet this burden.

Teachbook is subject to neither general nor specific jurisdiction of this Court.  Indeed, the

Plaintiff does not even plead general jurisdiction.  Accordingly, Teachbook does not address a general

jurisdiction argument, except as it is made clear through this memorandum that general jurisdiction

could not exist since Teachbook has no contacts with California, much less substantial and systematic

contacts.   Rather, Facebook's sole jurisdictional allegation is paragraph 5 of the Complaint –

"Defendant's willful actions herein alleged took place and/or caused tortious injury to Facebook in this

jurisdiction."

However, as of the date that the Complaint was filed and still to this day, Teachbook has not

performed <u>any</u> actions in California.  (Shrader Decl., paras. 4, 5, 7.)  Indeed, Teachbook affirmatively

committed <u>not</u> to do business in this state, due to California's uniquely restrictive anti-SPAM laws.

(*Id.*, para. 6.)  Thus Teachbook has directly controverted Plaintiff's conclusory allegation, and so Facebook must provide countervailing, admissible evidence.  Plaintiff cannot "simply rest on the bare allegations of its complaint" regarding the locus of Teachbook's acts.  *Schwarzanegger*, 374 F.3d at 800.  However, Facebook will be unable to adduce any such evidence and, for that reason, its Complaint must be dismissed.

To be clear, it is entirely insufficient for Facebook to assert that Teachbook's actions allegedly caused injury to it in this jurisdiction; Facebook must allege "something more".  *E.g., Calder,* 465 U.S. at 789; *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  The Ninth Circuit has recognized that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction." *Bancroft & Masters,* 223 F.3d at 1087.  As further explained in *Caddy,* the Plaintiff must also assert that the alleged intentional acts were "expressly aimed" at the forum – a burden that is impossible for Facebook to meet in this case.  *See, Caddy,* 453 F.3d at 1156.

### A. Teachbook has not purposefully availed itself of the privileges of doing business in California, so the Court lacks specific jurisdiction.

Facebook cannot establish any facts on which this Court could exercise specific personal jurisdiction over Teachbook.  Courts in the Ninth Circuit use a three-part test to determine whether specific jurisdiction exists:  (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.  *E.g., Caddy,* 453 F.3d at 1155.  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Caddy,* 453 F.3d at 1155. None of the three prongs has been met here.

### 1.   Teachbook has not purposefully directed <u>any</u> activity towards California.

For claims sounding in tort, such as trademark infringement claims, the first prong of the specific jurisdiction analysis -- 'purposeful direction' is examined using the *Calder* "effects" test. *Schwarzanegger*, 374 F.3d at 802.  The *Calder* test requires that the defendant allegedly: "1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Caddy,* 453 F.3d at 1155; *Schwarzanegger*, 374 F.3d at 803.  Facebook has alleged that Teachbook committed intentional acts which constitute trademark infringement.  However, Teachbook vigorously disputes that it took any actions intending to harm Facebook, or with knowledge that its actions could harm Facebook anywhere, much less in California.  More importantly, Plaintiff has not alleged, nor can it allege, either of the remaining requirements of *Calder's* effects test.

### a.   Teachbook did not commit any act "expressly aimed" at California.

In light of the fact that Teachbook intentionally chose *not* to aim its website at California residents, Facebook will be unable to meet the first or second elements of the *Calder* test.  The "express aiming" requirement is satisfied only if the defendant has directed its allegedly wrongful activity at the forum state.  *Id.*  As of the date that the Complaint was filed, Teachbook was in development and had less than 10 registered users from the general public, none identifying from California.  (Shrader Decl., para. 4.)  Ninth Circuit opinions have been clear that operating a website that is accessible by California residents is not sufficient to confer specific personal jurisdiction.  *E.g., Caddy*, 453 F.3d at 1156 (finding no purposeful direction because "a passive website alone does not constitute express aiming, and the defendant's website was not "directed at California"); *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2000) (holding that "website advertiser [did] nothing other than register a domain name and post an essentially passive website" and

1   nothing else was done "to encourage residents of the forum state" -- so there was no personal

2   jurisdiction.); *citing*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir.1997).

3       Facebook may not merely allege that Defendant's acts have had foreseeable effects in the

4   forum – the Ninth Circuit clearly requires "something more" be proved by the Plaintiff.  The *Cybersell*

5   court reasoned that, otherwise, "every complaint arising out of alleged trademark infringement on the

6   Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of

7   business is located.  That would not comport with traditional notions of what qualifies as purposeful

8   activity invoking the benefits and protections of the forum state."  130 F.3d at 420.

9       In this context, the Ninth Circuit defines "something more" as "action directed at the forum

10  state such as individualized targeting of a forum resident."  *E.g.*, *Caddy,* 453 F.3d at 1156; *Pharmastem*

11  *Therapeutics, Inc. v. Cord Blood Registry Inc.*, 2005 WL 88998, *2 (N.D. Cal 2005) (holding no

12  "express aiming" when defendant posted allegedly false and misleading information about plaintiff on

13  its website, because plaintiff was not the sole focus of defendant's post and the website was hosted in

14  Ohio and visible anywhere).  In C*addy*, the court reasoned:

15  
> We conclude that Caddy's actions were not expressly aimed at California.  The only acts
> identified by Pebble Beach as being directed at California are the website and the use of the
> name "Pebble Beach" in the domain name.  These acts were not aimed at California and,
> regardless of foreseeable effect, are insufficient to establish jurisdiction. …
>
> Pebble Beach asserts that [a list of] cases show that Caddy's website and domain name, coupled
> by his knowledge of the golf resort as a result of his working in California, are sufficient to
> satisfy the express aiming standard that it is required to meet.  We disagree.  If anything, these
> cases establish that "something more" -- the express aiming requirement -- has not been met by
> Pebble Beach.

453 F.3d at 1156.

       Teachbook has not directed <u>any</u> activity at California or at Facebook.  (Shrader Decl., para. 7.)

Though the Teachbook website, at the domain name <teachbook.com>, was and is visible anywhere in

the world, Teachbook has had no relevant contacts with California.  Teachbook intended to operate its

site for the express purpose of assisting educators, primarily in the Chicago region during initial service development.  (*Id.*, para. 6.)  Teachbook specifically restricted California residents from registering for the service, for reasons entirely unrelated to Facebook.  (*Id.*)  Thus, even if the mere maintenance of a website was sufficient (which it is not), Teachbook did the <u>exact opposite</u> of 'expressly aiming' its website at California.

Nor did Teachbook individually target Facebook.  (*Id.*, para. 7.)  Facebook alleges in paragraph 18 of the Complaint:  "the only conceivable reason to incorporate 'book' into Defendant's Mark is an intention to call to mind Facebook Marks, and to unfairly benefit from their fame" However, in light of the irrefutable evidence set forth herein, these arrogant allegations cannot be accepted as true, or as sufficient to impose specific jurisdiction.  If Plaintiff's bare allegation is enough to support jurisdiction, then there is simply no reason for jurisdictional analysis in trademark cases, as the plaintiff will always allege that the Defendant intentionally chose the mark to target plaintiff's goodwill.  <u>*See, e.g., Cybersell,*</u> 130 F.3d at 420.

At the time the Teachbook name was chosen, Teachbook's trademark counsel was aware of at least 31 other –BOOK formative marks for related services on file with the USPTO at that time. (Abboud Decl., para. 4.)  All of these marks were cleared of concerns by various USPTO Examining Attorneys, each of whom found no likelihood of confusion with Plaintiff's mark.  At least ten of these marks predated the Plaintiff's first use, including HUMANBOOK, registered for providing online directory services featuring information about classmates and co-workers, and for online social networking services, and MY YEARBOOK registered for online dating and social networking services.  All ten of those marks registered and so have been used in commerce, apparently without objection from Plaintiff.  (*See*, *id.*)

The other 21 marks also passed USPTO examination for registration without citation to Plaintiff's marks, including HOOKBOOK, LOOKBOOKS, WEBOOK, INFOBOOK, MAXBOOK, MYBIZZBOOK.COM, EDUBOOK 2.0, BLISSBOOK, PARENTBOOK, CHICBOOK, FIGHTBOOK, VETBOOK, REESBOOK, ASSBOOK, BOILERBOOK, IMMORTALITY BOOK, FINISHBOOK, and MUSICIANSBOOK – 18 applications for social networking services, by 18 applicants!   (*See*, *id.*)  In addition there were many other websites offering community and/or social networking services under a –BOOK formative mark – including Faithbook.com, Spacebook.com and AdoptionBook.com, each registered and first used in 1999 or 2000.  Faithbook even had a page on Facebook when TEACHBOOK was chosen.  (*Id.*, para. 5.)

Given all of the other –BOOK formative marks approved for social networking and analogous services at the time Teachbook chose its mark, without any apparent objection from Plaintiff up to that time, Plaintiff cannot prove that Teachbook intentionally targeted Facebook and its mark, or otherwise purposefully directed its activity in a "substantial way" towards California, as required by the Ninth Circuit.  *E.g.*, *Caddy*, 453 F.3d at 1156; *Schwarzenegger*, 374 F.3d at 807; *Cybersell*, 130 F.3d at 420; *Pharmastem*, 2005 WL 88998 at *2.  Teachbook is building its site for the express purpose of assisting educators, primarily in the Chicago region and specifically without participation by California residents.  So, Plaintiff cannot satisfy its burden of proof on this element.

### b.  Teachbook did not knowingly cause Facebook to suffer harm in California.

Under no circumstances can Facebook allege, much less prove, that Teachbook intended to cause Facebook harm in California.  At the time that it chose its mark and began to use it, Teachbook could not possibly have known that Facebook would be harmed, given all of the other –BOOK formative marks in use, registered, and/or which had passed examination of the PTO's various

Examining Attorneys, and many analogous websites in use, all without any apparent public objection from Facebook.  (Abboud Decl., paras. 4-5; Shrader Decl., para. 7.)

Moreover, when the complaint was filed, Teachbook intended only to create a localized website for the Chicago area, and specifically restricted California residents from registering and using the site.  (Shrader Decl., para. 6.)  "Where a defendant's 'express aim was local', the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test."  _Love v. Associated Newspapers, Inc._, 611 F.3d 601, 609 (9th Cir. 2010), _quoting_, _Schwarzenegger_, 374 F.3d at 807.  In _Love_, the Ninth Circuit found that the defendant "did contact people in California regarding the promotion that would eventually lead to the lawsuit."  611 F.3d at 609.  Still, the court held that those intentional acts were aimed entirely at markets outside of California, and thus defendant was not subject to jurisdiction here.  Similarly in this case, Teachbook has intentionally _not_ contacted persons in California and has restricted them from registering as users.  Hence, the facts supporting dismissal are even stronger in this case than they were in _Love_, and thus Teachbook also is not subject to jurisdiction under the _Calder_ test.

In addition, Facebook is a global company with many offices, including its Chicago office that "represents Facebook to the Midwest."  (Abboud Decl., para. 12.)  The Ninth Circuit has long recognized that corporations do not suffer harm in a particular locus, like individuals might.  _Cybersell_, 130 F.3d at 420 (finding that a corporation "does not suffer harm in a particular geographic location in the same sense that an individual does" and denying personal jurisdiction).  For example, the Ninth Circuit has "refused to accept the plaintiff's argument that the effects of libel are felt and jurisdiction exists wherever a corporate plaintiff resides."  _Casualty Assur. Risk Ins. Brok. Co. v. Dillon,_ 976 F.2d 596, 601 (9th Cir.1992), _cited in_ _Core-Vent_, 11 F.3d at 1486 ("We have never considered whether such

harm is primarily suffered in the place where the corporation is headquartered."). Thus Plaintiff also cannot prove this element of the *Calder* test.

### B.  **Plaintiff's cause of action did not arise from Defendant's forum activities.**

Under the Lanham Act, the events giving rise to the claim are deemed to occur where the 'passing off' of the infringing product occurs.  *E.g., Golden Scorpio Corp. v. Steel Horse Saloon I*, 2009 WL 348740, at *2 (D. Ariz. 2009); *Davis v. Howze*, 2003 WL 2131728, at *4.  As proved by Teachbook, it did not avail itself of the California forum.  It simply had not performed any actions in California when this case was filed.  Therefore Plaintiff's cause of action could not have arisen from any such activities.  Plaintiff has the burden of proof on this element as well as the "purposeful availment" element.  *Caddy*, 453 F.3d at 1155.  So this is an independent basis for the Court to refuse to exercise personal jurisdiction over Teachbook.

### C.  **The exercise of jurisdiction over Teachbook can not be reasonable.**

Even if Teachbook had 'minimum contacts' within California – which it does not – those contacts would still not pass constitutional muster since the assertion of personal jurisdiction in this case would not "comport with 'fair play and substantial justice.'"  *E.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).  The Supreme Court was clear that, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage in comparison to his opponent.'"  *Id.* at 478 (citations omitted).

There can be no question that it would be unreasonable for this Court to exercise jurisdiction in California over a small, fledgling, Illinois-based company which has no relevant contacts with the State of California, and which has expressly chosen not to do business in California.  Thus Plaintiff cannot prevail on this third requirement of the Ninth Circuit's test for specific personal jurisdiction, based on the Due Process clause of the Constitution.

Courts in the Ninth Circuit consider seven factors when evaluating this element of the test:  (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum.  *E.g., CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004); *see also, FDIC v. British-American Ins. Co.,* 828 F.2d 1439, 1442 (9th Cir. 1987) (declining to rule on purposeful availment in light of the conclusion that the exercise of jurisdiction would be unreasonable).  At least six of these factors weigh entirely or almost entirely in favor of Teachbook.

### 1.  Purposeful interjection into California.

The first factor has been discussed in detail above.  Teachbook has had no relevant contacts with California.  At most, Facebook relies on a legal theory as to alleged harm suffered here, allegedly as a result of Teachbook's intentional acts performed in Illinois.  But none of those acts occurred in or were targeted at California or at Facebook, and otherwise Teachbook has expressly restricted its business from the California market, for reasons entirely unrelated to Facebook.  As the Ninth Circuit held long ago:

> Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong].…  The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.

*Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1271 (9th Cir.1981); *quoted in, Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (holding jurisdiction unreasonable, even though contacts held sufficient to show purposeful availment).  Teachbook

intended <u>not</u> to do business in California due to the costs of complying with California's anti-SPAM laws, so it certainly did <u>not</u> expect to be hailed into court here.  Thus the exercise of personal jurisdiction would be patently unreasonable.

## 2.  Burden on Defendant Teachbook.

The burden on Teachbook of defending this litigation in California would be enormous. Teachbook is a startup venture, operated by its General Managing Partner and a handful of part-time contractors, with its only office and all employees in the Chicago suburbs.  (Shrader Decl., paras. 2, 3, 5.)  Teachbook's primary 'general' counsel Mr. Anthony Abboud, and its longstanding trademark counsel (who filed the TEACHBOOK trademark application), are both located in Chicago.  (*See* Abboud Decl., para. 4.)  Defending in California would require Teachbook's General Managing Partner and counsel to travel out-of-state, an expensive and time-consuming proposition given that the General Managing Partner is the primary person running this business, and outside counsel travel costs are expensive.  Indeed the burden in this case is particularly great because Teachbook has no ongoing connection to or relationship with California.  *See, e.g., Core-Vent,* 11 F. 3d at 1488 (holding that second factor weighed in favor of defendant who had no ongoing connection to the U.S.).[2]  So this factor favors Teachbook, and is a key factor in this case.  *See, e.g., Burger King,* 471 U.S. at 478 (stating that jurisdictional rulings should not cause any defendant 'severe disadvantage in comparison to his opponent'); *Pacific Atlantic Trading Co. v. M/V Main Exp.,* 758 F.2d 1325 (9th Cir.1985)

_____

[2] The Court further held:

> The burden on the Swedish doctors of defending in California would be substantially greater than the burden on Core-Vent in bringing their claims in Sweden. The doctors are individuals with little or no physical contacts with California.  Core-Vent, on the other hand, is a large international corporation with worldwide distribution of its products. Regardless whether the burden on the plaintiff is considered, this factor weighs heavily in favor of the doctors.

(finding "the burden on the defendant is the primary concern" and thus possible burden on plaintiff does not dilute the strength of this factor).

### 3. Interstate sovereignty.

The third factor is neutral, as there is no conflict between the sovereignty of California and Illinois. This case is primarily a matter of federal trademark law under the Lanham Act.

### 4. California's interest in this dispute.

Other than the fact that the forum state has one of Plaintiff's many offices, this forum has no unique or particular interest in adjudicating this dispute. As noted above, Facebook is an international company with many offices and assets in different states and, presumably, around the world. The forum state has no unique interest in adjudicating Facebook's primarily federal claims. Moreover, in light of the fact that Teachbook does not conduct business in California, this Court has no interest in adjudicating the California state law claims which, in all likelihood, will not and cannot be pursued against an out of state defendant that does not conduct business in California. So this factor favors Teachbook as well.

### 5. Most efficient resolution.

The fifth factor concerns the efficiency of the forum. "In evaluating this factor, [courts look] primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. In this case, Illinois is the most efficient forum, as all of Teachbook's evidence and witnesses are located there. Moreover, Facebook maintains its "face of the Midwest" in Chicago, and thus presumably flies some of its employees back and forth from California with some regularity. Of course Facebook's electronic records are presumably as accessible in Chicago as in California. It would not be oppressive for one or two of Facebook's thousands of employees to be called to Chicago

for trial, if any.  On the other hand it would be oppressive to require Teachbook to fly to California for trial.  Thus, this factor leans in Teachbook's favor.

### 6.  Importance of California forum to Facebook.

"[I]n this circuit, the plaintiff's convenience is not of paramount importance."  *Dole Food Co.*, 303 F.3d at 1116; *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.2d 1122, 1133 (9th Cir. 2003); *see also*, *Pacific Atlantic Trading*, 758 F.2d 1325 (9th Cir.1985) (holding "the burden on the defendant is the primary concern," and thus the possible burden on the plaintiff does not dilute the strength of the second factor re the burden on defendant).  While it may be more convenient for Facebook to have this dispute adjudicated in California, since it ha a major office and some of its lawyers located here, resolution of the case in California would not be any more efficient than in Chicago.  Presumably the Plaintiff, who has a major office in Chicago "representing Facebook to the Midwest", has employees flying regularly between those locations.  Plaintiff's counsel has offices in Colorado, Virginia, Boston, New York, Seattle and Washington D.C., in addition to California. (Abboud Decl., para. 14.)  Indeed Plaintiff's lead counsel litigated a matter for Google in the Northern District of Illinois in 2008.  (*Id.*)  So it ought not be unduly inconvenient for them to prosecute this lawsuit in Chicago, where the comparatively tiny Teachbook is located.  This factor favors Teachbook.

### 7.  Availability of an alternate forum.

It cannot be disputed that, because Teachbook resides in the Chicago suburbs, and Facebook maintains a substantial office in Chicago, the Northern District of Illinois provides a convenient alternative forum for this dispute.  Teachbook has consented to jurisdiction of that court in this matter. (Shrader Decl., para. 9.)  Moreover, as Teachbook is a tiny company that has done nothing to intentionally avail itself of California's privileges or to harm Facebook, and Facebook is a multi-billion dollar company with offices in Chicago and all over the world, Teachbook would be placed at a

Motion to Dismiss or Transfer                    19

"severe disadvantage" in this litigaion if it remains in California.  _See e.g., Sher,_ 911 F.2d at 1357.

Thus this factor weighs in favor of Teachbook.

Weighing all of these seven considerations, the balance of factors clearly and almost entirely favors Teachbook.  Therefore, this Court should not exercise personal jurisdiction over Teachbook in this case.

### D.  <u>VENUE IS NOT PROPER IN CALIFORNIA.</u>

While the case should properly be dismissed pursuant to Rule 12(b)(2), Teachbook moves in the alternative to dismiss pursuant to Rule 12(b)(3) and/or 28 U.S.C. sec. 1406(a), else to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Plaintiff's complaint, paragraph 6, merely makes the conclusory allegation that venue is proper per 28 U.S.C. § 1391, because "a substantial part of the events giving rise to the claims occurred [here]."  However, that conclusory allegation cannot support venue in this case.  Under the Lanham Act, this court has held that the "events giving rise to the claim are deemed to occur where the 'passing off' of the infringing product occurs."  _Golden Scorpio_, 2009 WL 348740, at *2; _Davis_, 2003 WL 2131728, at *4.  Teachbook has proved that none of its actions have taken place in California, at the time the complaint was filed there were less than ten registered users from the public, and none identifying in California, and in fact California residents were specifically restricted from service.  So 'passing off' of the allegedly infringing website could not have occurred in California in any legally cognizable way.

As such, this Court should dismiss the Complaint for lack of venue, or in the alternative, in the interests of justice and for the convenience of the parties and witnesses, the action should be

transferred to the Northern District of Illinois.

### A. Legal Standard For Transfer of Venue

Factors that may be considered in making this determination include plaintiff's choice of forum, convenience of the parties, convenience of the witnesses, ease of access to the evidence, and any local interest in the controversy. *E.g., Williams v. Bowman,* 157 F.Supp.2d 1103, 1106 (N.D.Cal.2001). All of those factors have been discussed at length above. Other than Plaintiff's choice of forum which ought be accorded only very little weight, all of the factors weigh heavily in favor of transfer. *See, e.g., Dakota Beef L.L.C. v. Pigors,* 445 F.Supp.2d 917, 920-21 (N.D.Ill.2006) (finding venue improper where the defendant operated a website equipped to take orders and which advertised products with allegedly infringing marks because "only two orders were received, none were filled, and none were shipped to the district") *Jamba Juice Co. v. Jamba Group, Inc.,* 2002 WL 1034040, at *2 (N.D.Cal.2002) (finding venue improper in a trademark infringement action where the only allegation was that the defendant operated a website that was accessible in the district, which was the plaintiff's principle place of business, because to find venue proper would "be to adopt a rule that would subject any corporation with a website to venue in the district in which plaintiff does business ... [a rule] that would dramatically alter the present venue statute").

Courts also expressly consider the relative means of the parties, which has also been discussed above. *E.g., All-Star Marketing Group, LLC v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1131-32 (C.D. Cal. 2009); *Dwyer v. General Motors Corp.,* 853 F. Supp. 690, 693 (S.D.N.Y. 1994); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 989 (E.D.N.Y.1991) ("[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer"); *see also, Tensor Group, Inc. v. All Press Parts & Equipment, Inc.,* 966 F.Supp. 727, 728-29 (N.D.Ill.1997) (concluding that convenience of the

parties weighed in favor of transferring a copyright infringement action from Illinois to Wisconsin, because the plaintiff was large corporation that would not be burdened by litigating in Wisconsin, while alleged infringer was a "one-man operation" that would face great burden if forced to litigate in Illinois).

Courts also consider whether injunctive relief is sought, as in this case, and whether one court or the other will be "closer to the action" and better able to monitor compliance with any injunction that may be granted.  _Law Bulletin Pub. Co. v. LRP Publications, Inc._, 992 F. Supp. 1014, 1020-21 (N.D. Ill. 1998)**.**  In this case, Plaintiff primarily seeks injunctive relief, as its claims to damages are specious at best.  Obviously the court in Chicago is much more able to monitor compliance with any injunction entered against Teachbook, if any, since Teachbook has no contacts with California.  Thus all of these factors support transfer of this case.

### B.  Transfer Would Promote Convenience Of Parties And Witnesses

The second, and most important, factor to be analyzed under Section 1404(a) is whether such a transfer would be more convenient to the parties and the witnesses.  In evaluating the convenience and fairness of the proposed transfer, courts generally consider five factors: 1) the plaintiff's choice of forum; b) the site of material events; 3) the access to evidence, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses; 4) the convenience of the witnesses; and 5) the convenience of the parties to litigating in each forum.  _See, e.g._, _All-Star Marketing_, 666 F.Supp.2d at 1132; _Tong v. Direct Trading Corp._, 2003 WL 22282466, *4 (N.D. Ill. Oct. 1, 2003) (citation omitted).  Application of the facts of the instant case to the factors set forth above clearly establishes that the transfer of the case to the Northern District of Illinois is consistent with the convenience of the parties and witnesses.

First, Plaintiff's choice of forum may be disregarded where "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum" or "where another forum bears a stronger relationship to the dispute." *E.g, Tong v. Direct Trading Corp.*, 2003 WL 22282466, *4 (N.D. Ill. 2003) (citation omitted); *Yuba Nursing Home, Inc. v. TLC of the Bay Area, Inc.*, 2001 WL 1136140, * 4 (N.D. Ill. 2001); *see also, Dole Food Co.*, 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's convenience is not of paramount importance." ); *Harris Rutsky*, 328 F.2d at 1133; *Pacific Atlantic Trading*, 758 F.2d 1325 (9th Cir.1985).  Here, Facebook has chosen its home forum, the Northern District of California, despite the fact that Teachbook has no contacts with the State of California.  Under the Lanham Act, it is the defendant's conduct that gives rise to a plaintiff's claim.  Teachbook's allegedly improper conduct all occurred in the State of Illinois, where it developed its Teachbook.com website, where it maintains its business office, and employees.  (Shrader Decl., paras. 2, 4, 5).  Accordingly, Facebook's choice of forum should be afforded minimal weight in determining whether to transfer the case to a more convenient forum.

Second, as stated above, Lanham Act claims against Teachbook indicate that the site of the material events giving rise to such claims is in Illinois, not in California.

Third, all of the relevant evidence is in Illinois.  All of Teachbook's business operations, all of its documents, and all of its records, are located in Illinois.  In addition, all of Teachbook's employees and relevant contractors are located in Illinois as well.  As such, the majority of fact discovery would take place in Illinois.  Lastly, the Northern District of Illinois would be better able to deal with "any discovery related issues that may arise, including the power to compel the appearance of unwilling witnesses." *Tong*, 2003 WL 22282466, *5.  Accordingly, the Northern District of Illinois is the better choice of forum.

Motion to Dismiss or Transfer                                      23

Fourth, convenience of witnesses weighs heavily in favor of transferring this action to the Northern District of Illinois.  <u>All</u> of Teachbook's employees and contractors are located in Illinois. Accordingly, all of the witnesses concerning Teachbook's advertising, sales and operations are located in Illinois.  None are located in California.  Thus, it appears that most of the potential witnesses in this matter are located in Illinois.  Facebook and its counsel are accustomed to litigating in venues all over the United States, obviously flying witnesses to and from as necessary.  One more case in federal court outside of California cannot cause much inconvenience to Facebook, which maintains its "representatives to the Midwest" in Chicago.  Accordingly, this factor weighs in favor of transfer.

Fifth, the final factor to consider is the convenience to the parties, "including their respective residences and ability to bear expense at trial," weighs heavily in favor of transfer.   <u>*Dean Foods Co.*</u> <u>*v. Eastman Chem. Co.*</u>, 2000 WL 1557915, at \*4 (N.D. Ill. 2000).  Plaintiff and its lawyers are obviously well-financed "professional plaintiffs," who have filed and defended a slew of federal lawsuits against a myriad of third parties, during its short existence.  Plaintiff cannot claim that it would suffer in any way by litigating in Illinois, especially since it has chosen to conduct business so heavily in the Northern District of Illinois.

Thus all of the factors, except Facebook's choice of forum, favor the transfer of this matter to a more convenient forum, the Northern District of Illinois.

### D.   Interest of Justice

The final prong of the transfer analysis examines factors such as "each forum's relationship to the cause of action, each court's likely access to the sources of proof and other evidence, and each court's familiarity with the applicable law," as well as the speed at which the case will proceed to trial. *Tong*, 2003 WL 22282466, at \*5.  As set forth above, this Court's relationship to Facebook's claims arise only because Facebook maintains a place of business here.  Since Plaintiff's claims are based on a

Motion to Dismiss or Transfer                     24

federal statute, any federal district court is equally capable of handling such claims. Accordingly, the transfer of this matter to the Northern District of Illinois would best serve the interest of justice. *See, e.g., Tong*, 2003 WL 22282466, at *5 (granting motion to transfer because court's relationship with plaintiff's claim, which was based on a federal statute, arose only because she resided there and vast majority of the conduct giving rise to plaintiff's claim occurred in the transferee forum).

The contacts between Teachbook's allegedly infringing activities and the Northern District of California are *de minimus* or non-existent. As such, in order to effectuate the purpose of the venue statute, the Court should transfer the case to the Northern District of Illinois.

## CONCLUSION

Facebook has not and cannot establish the Court's personal jurisdiction over Teachbook in California, nor proper venue here. For this reason, the Court should dismiss the Complaint. Alternatively, should this Court find that personal jurisdiction and proper venue exist, it should nevertheless transfer this action to the United States District Court for the Northern District of Illinois, for the convenience of the parties and in the interests of justice.

Dated: November 5, 2010                     Respectfully submitted,

                                            **RODENBAUGH LAW**

                              By:  _/s/ *Mike Rodenbaugh*_____
                                            Michael L. Rodenbaugh

                                            *Attorneys for Defendant, TeachBook.com LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 5, 2010, I caused the foregoing Motion to Dismiss or Transfer, the supporting Declarations of Greg Shrader and Anthony L. Abboud, the Proposed Order, and the Certificate of Interested Entities or Persons, all to be filed via the CM/ECF system and served on opposing counsel via electronic notification.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 5, 2010 in Los Gatos, California.

*/s/ Mike Rodenbaugh*
Mike Rodenbaugh