**E-FILED on** 5/3/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br>        Plaintiff, <br><br>    v. <br><br> TEACHBOOK.COM, LLC, <br><br>        Defendant. | No. CV 10-03654 RMW <br><br> ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION <br><br> **[Re Docket Nos. 15, 18]** |

Defendant Teachbook.com, LLC ("Teachbook") moves to dismiss the complaint for lack of personal jurisdiction or improper venue. In the alternative, Teachbook moves to transfer the case to the Northern District of Illinois. For the reasons set forth below, the court grants Teachbook's motion to dismiss for lack of personal jurisdiction.

## I. BACKGROUND

Facebook provides social networking services under the FACEBOOK mark to more Americans than any other social networking service. It was founded in 2004. At the time Facebook filed this complaint, it was the second most trafficked website in the United States, and it continues to enjoy nearly continuous unsolicited media coverage. Facebook owns multiple registrations and applications for its FACEBOOK and related marks.

1  Teachbook is a startup venture that seeks to provide a social and professional networking
2  community for teachers. In March 2009, Teachbook applied to register the TEACHBOOK mark
3  with the USPTO, disclosing its intent to use the mark for a variety of online services. Prior to filing
4  the trademark application, Teachbook commissioned a trademark clearance search which revealed
5  thirty-one "–BOOK" formative marks for interactive computer services, including ten marks that
6  were first used in commerce prior to Facebook. The search disclosed by Teachbook revealed that
7  Facebook had filed extensions of time to oppose several –BOOK marks, but that Facebook had not
8  yet opposed any of the –BOOK marks. Teachbook's search allegedly did not reveal that Facebook
9  had opposed registration of the DATEBOOK mark in 2007, because that opposition had been
10 resolved by the applicant's default and abandonment of the application.

11 Facebook filed this action on August 12, 2010, alleging trademark infringement and dilution
12 of the FACEBOOK mark by Teachbook. Facebook alleges that the use of a generic –BOOK mark
13 on a competing social networking website is likely to confuse consumers and dilute the
14 FACEBOOK brand. Facebook further alleges that the nature of Teachbook's services, as well as
15 statements on its website by which it advertises itself as an alternative to Facebook, demonstrate that
16 Teachbook selected its –BOOK mark with an intention to call to mind and compete with Facebook.
17 Teachbook, somewhat implausibly, insists that it did not intend to trade on Facebook's mark, and
18 that it selected the TEACHBOOK mark in 2009 because of the connection between teachers and
19 books.

20 In the complaint, Facebook alleges that jurisdiction and venue are appropriate in the
21 Northern District of California because Teachbook intentionally adopted an infringing trademark for
22 use on social networking services that directly compete with Facebook, and because Facebook, a
23 resident of Palo Alto, suffered injuries in this district. Teachbook now moves to dismiss the
24 complaint for lack of personal jurisdiction or improper venue, or, in the alternative, to transfer venue
25 to the Northern District of Illinois, where it is resident.

## II. ANALYSIS

27 In a 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the
28 burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor*

*Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts, which, if true, would be sufficient to establish personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). If not directly controverted, the plaintiff's version of the facts is taken as true for the purposes of the motion. *Id.* Conflicts between the facts stated in the parties' affidavits are to be resolved in plaintiff's favor. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

**A.     Specific Jurisdiction**

Facebook contends that Teachbook has sufficient "minimum contacts" with California arising from or related to its actions in adopting the TEACHBOOK mark to establish specific personal jurisdiction in the Northern District of California. The Ninth Circuit has articulated the following three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or is related to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

With respect to the first prong, in cases sounding in tort, such as a suit for trademark infringement, the court must determine whether the conduct at issue was "purposefully directed" at the forum. *Id.* "We evaluate purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *Schwarzenegger*, 374 F.3d at 803. The "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See id.* (citing *Dole Food*, 303 F.3d at 1111).

Facebook argues that it satisfies the effects test by making a prima facie showing that Teachbook (1) intentionally selected a confusingly similar trademark, (2) intended to compete with Facebook, a

California resident, and (3) knew that its use of the TEACHBOOK mark would injure Facebook at its headquarters in California.

Facebook has made a prima facie showing that Teachbook committed an intentional act by selecting a confusingly similar trademark, and that the act caused harm that Teachbook knew was likely to be suffered in the Northern District of California. Nonetheless, Facebook fails to satisfy the "effects" text because it has not made a prima facie showing that Teachbook's conduct was "expressly aimed" at the forum. The Ninth Circuit has repeatedly confirmed that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction." *See id.* (citing *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). In this case, Teachbook's conduct does not satisfy the Ninth Circuit's requirement that there be "something more" than foreseeable effects in the forum state. *See id.* at 805.

Here, Teachbook's alleged intentional act–adopting an infringing trademark–was expressly aimed at potential users of Teachbook's website. Teachbook does not register users in California. Thus, even if Teachbook intended to compete with a California company, it intended to compete for users who were not in California. The fact that an essentially passive Internet advertisement may be accessible in the plaintiff's home state without "something more" is not enough to support personal jurisdiction in a trademark infringement suit brought in the plaintiff's home state. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (1997); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ("[T]here can be no doubt that we still require 'something more' than just a foreseeable effect to conclude that personal jurisdiction is proper. . . . [A]n internet domain name and passive website alone are not 'something more,' and, therefore, alone are not enough to subject a party to jurisdiction."); *Schwarzenegger*, 374 F.3d at 807 (even though the infringing advertisement might lead to harm in California, this foreseeable effect was not enough because the advertisement was expressly aimed at Ohio rather than California).

This case falls somewhere between the Ninth Circuit's two most recent cases interpreting the "expressly aimed" requirement. In *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-30 (9th Cir. 2010), the Ninth Circuit held that the "expressly aimed" prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing intellectual property on the defendant's website for the purpose of competing with the plaintiff in the

1   forum. In *Brayton*, a Northern California law firm that alleged that the defendant, a Southern California
2   law firm, had committed willful copyright infringement targeted at the plaintiff's business in Northern
3   California through verbatim copying of text from plaintiff's website for use on defendant's website. *Id.*
4   The court held that the defendant's "conclusory denial" that it actions were aimed at potential clients in
5   Northern California did not rebut the plaintiff's fact-based allegation to the contrary: "Although
6   [defendant's] website included only San Diego and Orange County phone numbers, the website does
7   not restrict its promotion of the firm to Southern California or San Diego County, nor is there any
8   indication that, as California-licensed attorneys, [defendant's] practice is limited within California." *Id.*
9   at 1127. The court distinguished *Pebble Beach*, in which the court found no personal jurisdiction where
10  the defendant merely registered and operated a passive informational website. 453 F.3d at 1157. In
11  contrast, it explained, "[defendant here] has done more than merely maintain a passive website. By
12  plagiarizing [plaintiff's] website verbatim, [defendant] allegedly placed the two law firms in competition
13  in the area of elder abuse law and created confusion among potential clients as to the true authorship
14  of the elder abuse material. This individualized targeting distinguishes the instant case from *Pebble
15  Beach*." *Brayton*, 606 F.3d at 1130. "[Defendant's] actions placed it in direct competition with
16  [plaintiff] in Northern California." *Id.* at 1130.

17  On the other hand, in *Love v. Associated Newspapers, Ltd.*, the court found that a plaintiff
18  alleging claims under the Lanham Act and California's common law right of publicity could not satisfy
19  the "express aiming" prong of the effects test to establish jurisdiction in California. 611 F.3d 601, 609
20  (9th Cir. 2010). Although the defendant did contact people in California regarding the promotion (a
21  give-away of Beach Boys' compact discs by a British newspaper) that led to the lawsuit, the court
22  explained that "[t]he intentional acts that allegedly harmed [the plaintiff] . . . were directed entirely at
23  markets in the United Kingdom and Ireland." *Id.* "Because [the defendant] did not purposefully direct
24  any of the relevant intentional acts at California, it was not subject to the jurisdiction of a court in that
25  state." *Id.*

26  None of Teachbook's acts was purposefully directed at California; to the contrary, Teachbook
27  took purposeful steps to avoid the California market. Facebook has failed to identify "something more"
28  than foreseeable effects in the forum. Facebook relies on *Panavision International, L.P. v. Toeppen*,

141 F.3d 1316 (9th Cir. 1998), but that case is significantly different. There, the defendant, a resident of Illinois, had registered an internet domain name incorporating the plaintiff's registered trademark and sent a letter to the plaintiff in California demanding $13,000 to release his registration. The Ninth Circuit explained: "Toeppen did considerably more that simply register Panavision's trademarks as his domain names on the Internet. He registered those names as part of a scheme to obtain money from Panavision. Pursuant to that scheme, he demanded $13,000 from Panavision to release the domain names to it. His acts were aimed at Panavision in California, and caused it to suffer injury there." *Id.* at 1318. This case does not involve any action directly aimed at the forum like the mailing of a letter seeking to extort money.

### B. Jurisdictional Discovery

Facebook also requests jurisdictional discovery to allow it to gather evidence about whether Teachbook aimed conduct at Facebook in California by directing the harm to a California plaintiff. However, there is no suggestion that discovery would establish jurisdiction in the face of Teachbook's failure to permit California residents to register on its website and its failure to compete for users with Facebook in California. Therefore, the request is denied.

### III. ORDER

For the foregoing reasons, the court grants the motion to dismiss for lack of personal jurisdiction.

DATED: 5/2/2011

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge